1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMAN DAVID AVILA CASTILLO,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:25-cv-01296-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY RESPONDENTS' MOTION TO DISMISS, AND RELEASE PETITIONER ON APPROPRIATE CONDITIONS<br><br>(ECF Nos. 1, 9) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a native and citizen of Honduras. (ECF No. 1-5 at 5; ECF No. 9-1 at 3.[1]) Petitioner left Honduras for the first time in 2009. (ECF No. 1-5 at 8.) Between 2009 and 2013, Petitioner sought to enter and was removed from the United States multiple times. Petitioner was last removed in 2013 after his applications for relief from removal were denied. (Id. at 8–9.)

Petitioner returned to the United States around 2014 and has lived here continuously since then. (ECF No. 1-5 at 11.) In November 2016, Petitioner was convicted of assault by

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

means likely to produce great bodily injury in the San Mateo County Superior Court and was sentenced to two years in prison. (ECF No. 9-9 at 2.) In February 2023, Petitioner was convicted of being an accessory after the fact in the San Mateo County Superior Court and was sentenced to eighty-four days in jail. (ECF No. 9-1 at 3; ECF No. 9-10 at 14.)

The Department of Homeland Security ("DHS") arrested Petitioner on November 29, 2023. (ECF No. 1-10 at 6; ECF No. 9-11 at 2, 4.) He has remained in DHS custody ever since. (ECF No. 1 at 13.) On November 29, 2023, DHS issued a Notice of Intent/Decision to Reinstate Prior Order. (ECF No. 1-3.) Petitioner was referred to U.S. Citizenship & Immigration Services ("USCIS") for reasonable fear screening and interviews, which occurred with Petitioner's counsel present on December 19 and 27, 2023. (ECF No. 1-4; ECF No. 1-9 at 3.) On January 9, 2024, the asylum officer determined that Petitioner had established a reasonable fear of persecution or torture in Honduras and referred his case to immigration court for withholding-only proceedings. (ECF No. 1-4; ECF No. 1-9 at 4.)

On January 22, 2025, an immigration judge ("IJ") granted Petitioner's application for deferral of removal under the Convention Against Torture ("CAT"). (ECF No. 1-8; ECF No. 9-14.) DHS waived the issuance of a formal oral decision and further indicated that it waived the ability to appeal. (Id.)

In May 2025, a deportation officer gave Petitioner a "Notice of Removal," which stated: "This letter is to inform you that U.S. Immigration & Customs Enforcement (ICE) intends on removing you to Mexico." (ECF No. 1-9 at 4.) The officer explained that if Petitioner signed the paper, he would be deported to Mexico[2] that day or the next day. Although the officer did not ask whether Petitioner was afraid to be deported to Mexico, Petitioner affirmatively expressed a fear of deportation to Mexico and asked for a reasonable fear interview with an asylum officer. (Id.) Petitioner's counsel reiterated this request for an interview to Petitioner's ICE Deportation Officer and to the asylum office on May 21, May 23, July 1, and July 3. (Id. at 5; ECF No. 1-11.)

On July 15, 2025, Petitioner filed a petition for review of his reinstatement of removal order in the Ninth Circuit. (ECF No. 1-17.) Petitioner also filed a motion for stay of removal, and

---

[2] Petitioner is not a citizen of Mexico and does not have any ties there. (ECF No. 1 at 19.)

1  per Ninth Circuit General Order 6.4(c), Petitioner's removal is automatically stayed pending

2  further order of the Ninth Circuit. (ECF No. 1 at 22.) The matter is still pending. (Id. at 21.)

3      On July 28, 2025, DHS conducted a "third country screening" interview without notice

4  and without the presence of counsel, despite Petitioner having attorneys of record who had

5  repeatedly asked to be given notice. (ECF No. 1-9 at 5; ECF No. 1-11.) Petitioner was not given

6  a chance to file any documents prior to the interview. During the interview, Petitioner "had a lot

7  of problems," such as being unable to give complete answers to the officer's questions due to

8  interruptions from the interpreter and feeling "nervous and scared" because he did not have a

9  chance to give all the details he wanted to say. (ECF No. 1-10 at 5.)

10     After learning of the interview, Petitioner's counsel emailed DHS on July 28, 2025 to

11  present country conditions documents in support of Petitioner's fear of return to Mexico. (ECF

12  No. 1-9 at 6.) The asylum office responded that they did not have a fully executed Form G-28[3]

13  on record for counsel. On July 29, 2025, after counsel sent the previously-filed Form G-28, the

14  asylum office confirmed receipt of the country conditions documents and indicated that

15  Petitioner's case was "pending determination" and that "[o]nce a determination has been

16  finalized, the documentation will be retrievable via email per request." (ECF No. 1-9 at 6; ECF

17  No. 1-11 at 3.)

18     Petitioner received a decision from the asylum office in early August that he would be

19  removed to Mexico. On August 7, 2025, counsel emailed the asylum office to receive a copy of

20  the fear decision and all related documents and indicated that Petitioner would be seeking review

21  of the fear decision before an immigration judge. (ECF No. 1-9 at 6; ECF No. 1-11 at 3.) When

22  counsel spoke to Petitioner by video on August 12, 2025, counsel was able to take a screenshot

23  of the "Third Country Screening Notice" Petitioner was given. (ECF No. 1-9 at 6.) DHS had

24  apparently issued a "third country screening notice" on July 28, 2025, the date of the interview,

25  indicating that DHS had determined that Petitioner "did not establish that it is more likely than

26  not that [he] will be tortured in Mexico." (ECF No. 1-12.) The check-box order does not contain

27

28  [3] "Form G–28" is a "Notice of Entry of Appearance as Attorney or Representative." Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 566 (9th Cir. 1990).

1   reasoning for the decision or notes from the interview. (ECF No. 1-12.) The paper was not given

2   to Petitioner until days later, and it was never served on counsel, despite counsel's repeated

3   requests for a copy of any decision.[4] (ECF No. 1-9 at 6, 7; ECF No. 1-10 at 32.)

4         On August 20, 2025, Petitioner filed a "Motion to Set Hearing for Review of Reasonable

5   Fear Interview for Third Country: Mexico" with the immigration court. (ECF No. 1-9 at 7; ECF

6   No. 1-14.) On September 22, 2025, counsel received correspondence from the immigration court

7   that the motion for review had been rejected based on missed check-box information on a form.

8   Counsel re-filed the motion on September 23, 2025. (ECF No. 1-9 at 7.)  As of October 1, 2025,

9   no response has been received from either by the immigration court or opposing counsel. (ECF

10  No. 1 at 21.)

11        On October 1, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for

12  temporary restraining order ("TRO"). (ECF Nos. 1, 2.) In the motion for TRO, Petitioner

13  requested that Respondents be ordered to refrain from removing him to a third country unless

14  and until he is afforded notice and a meaningful opportunity to present a fear-based claim to that

15  country before a neutral adjudicator. (ECF No. 2 at 26.) On October 6, 2025, the assigned district

16  judge denied the motion for TRO without prejudice, "conclud[ing] that the requested injunctive

17  relief is unwarranted because the Ninth Circuit's automatic, temporary stay already protects Mr.

18  Avila Castillo from removal to a third country." (ECF No. 6 at 2.) The Court ordered "a

19  conditional, additional stay of removal to allow Mr. Avila Castillo an opportunity to renew his

20  request for injunctive relief should the Ninth Circuit lift its automatic stay while this § 2241 case

21  remains pending" and referred the matter to the undersigned to be resolved on the merits. (Id.)

22        On November 21, 2025, Respondents filed a motion to dismiss and response to the

23  petition. (ECF No. 9.) On December 12, 2025, Petitioner filed an opposition to the motion to

24  dismiss. (ECF No. 10.) On December 29, 2025, Respondents filed a reply. (ECF No. 11.)

25  ///

26

---

27  [4] On August 13, 2025, counsel sent a follow-up email to the asylum office asking for a copy of the fear decision. On
    September 15, 2025, the asylum office responded to counsel's inquiry. "Their email stated: 'As your client was not

28  in the RF process and did not have an RF interview, there are no documents to give you and there is no review by an
    immigration judge.'" (ECF No. 1-9 at 7.)

**II.**

**DISCUSSION**

In the petition, Petitioner asserts the following claims for relief: (1) Respondents' third country removal procedures generally and as applied to Petitioner violate the Immigration and Nationality Act ("INA"), the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA") and its implementing regulations, and the Administrative Procedures Act ("APA"); (2) Respondents' third country removal procedures generally and as applied to Petitioner violate the Due Process Clause of the Fifth Amendment; and (3) Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment and the INA, 8 U.S.C. § 1231(a)(6). (ECF No. 1 at 29–30.)

**A. Third Country Removal**

In Counts One and Two, Petitioner challenges Respondents' third country removal procedures generally and as-applied to Petitioner on statutory and constitutional grounds. (ECF No. 1 at 29.) Respondents contend that these claims should be dismissed for lack of jurisdiction and that regardless, Petitioner has failed to show that his prospective removal to Mexico would violate any statute, regulation, or due process. (ECF No. 9 at 7.)

1. Jurisdiction

Respondents argue that "Counts 1 and 2 of the Petition challenge DHS's existing procedures for certain CAT claims and thus concern the 'application' of CAT and are 'cause[s] or claim[s] under' CAT. Such causes or claims may only be heard in a petition for review of a final order of removal in the court of appeals," under 8 U.S.C. § 1252(a)(4) and FARRA. (ECF No. 9 at 9.)

Section 1252(a)(4) provides:

(4) Claims under the United Nations Convention

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

8 U.S.C. § 1252(a)(4). The Convention Against Torture ("CAT") "is a treaty signed and ratified by the United States, but is non-self-executing." Trinidad y Garcia v. Thomas, 683 F.3d 952, 955 (9th Cir. 2012) (citing 136 Cong. Rec. 36,198 (1990)). "Congress, however, has implemented the treaty by statute as part of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA). 8 U.S.C. § 1231 note." Trinidad y Garcia, 683 F.3d at 955–56. FARRA provides in pertinent part:

> (d) REVIEW AND CONSTRUCTION.—Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).

Pub. L. No. 105-277, 112 Stat. 2681, 2822, § 2242(d).

The Court finds Trinidad y Garcia v. Thomas, 683 F.3d 952 (9th Cir. 2012), instructive. Trinidad y Garcia filed a § 2241 habeas petition "alleg[ing] that his extradition to the Philippines would violate his rights under the Convention Against Torture (CAT) and the Fifth Amendment's Due Process Clause." Id. at 955. The Ninth Circuit held that the "district court had jurisdiction over the action pursuant to 28 U.S.C. § 2241," finding that "[n]either the REAL ID Act (8 U.S.C. § 1252(a)(4)) nor FARRA (8 U.S.C. § 1231 note) repeals all federal habeas jurisdiction over Trinidad y Garcia's claims, as the government asserts." Id. at 956. "A statute must contain 'a particularly clear statement' before it can be construed as intending to repeal habeas jurisdiction." Id. (quoting Demore v. Kim, 538 U.S. 510, 517 (2003)). The Ninth Circuit held that "FARRA lacks sufficient clarity to survive the 'particularly clear statement' requirement" and that the "REAL ID Act can be construed as being confined to addressing final orders of removal, without affecting federal habeas jurisdiction." Trinidad y Garcia, 683 F.3d at 956 (quoting Saint Fort v. Ashcroft, 329 F.3d 191, 200–02 (1st Cir. 2003)).

Based on the foregoing, the Court recommends finding that dismissal is not warranted pursuant to 8 U.S.C. § 1252(a)(4) and FARRA. See E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 190 (3d Cir. 2020) ("Subsection (a)(4) does not bar now-or-never

1    claims: claims that could not be meaningfully redressed by petition for review after a final order

2    of removal."); D.V.D. v. U.S. Dep't of Homeland Sec., 778 F. Supp. 3d 355, 376 (D. Mass.

3    2025) ("As Defendants initiated the third-country-removal process at issue *after* the conclusion

4    of removal proceedings—and because Plaintiffs have no opportunity to raise these issues before

5    an IJ without some type of advance notice—there can be no judicial review as contemplated in

6    the channeling provisions of section 1252(a)(4). . . . As such, neither section 1252(a) nor section

7    1252(b) bars this Court's jurisdiction."); Ortega v. Kaiser, No. 25-CV-05259-JST, 2025 WL

8    2243616, at *4 (N.D. Cal. Aug. 6, 2025) (finding "FARRA, by its plain language, does not bar

9    this Court's [habeas] review" where petitioner "does not seek review of 'the regulations adopted

10   to implement' CAT or 'claims considered under' CAT" but "[i]nstead, he asks not to be detained

11   or removed without first receiving due process as to any CAT claim he might have for a third

12   country to which the Government seeks his removal"); Santamaria Orellana v. Baker, No. CV

13   25-1788-TDC, 2025 WL 2841886, at *8 (D. Md. Oct. 7, 2025) ("Here, Santamaria Orellana has

14   CAT withholding in relation to El Salvador and is seeking IJ review of his claim that he has a

15   reasonable fear of removal to Mexico. In the Petition, however, he does not seek review of any

16   determination by an IJ or the BIA pursuant to CAT; rather, he seeks only the opportunity to have

17   an IJ hear his reasonable fear claim that may be based on CAT. The Court therefore does not find

18   that he is seeking judicial review of a claim under CAT for purposes of § 1254(a)(4) or FARRA

19   § 2242(d).").

20        Respondents also argue that "under 8 U.S.C. § 1252(g), Congress has stripped district

21   courts of jurisdiction over 'any cause or claim by or on behalf of any alien arising from the

22   decision or *action* . . . to commence proceedings, adjudicate cases, or *execute* removal orders."

23   (ECF No. 9 at 9 (quoting 8 U.S.C. § 1252(g)).) Petitioner contends that this jurisdictional

24   argument is foreclosed by Ibarra-Perez v. United States, 154 F.4th 989, 996 (9th Cir. 2025).

25        Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any

26   cause or claim by or on behalf of any alien arising from the decision or action by the Attorney

27   General to commence proceedings, adjudicate cases, or execute removal orders against any alien

28   under this chapter." 8 U.S.C. § 1252(g).

The Supreme Court has given a "narrow reading" to § 1252(g). *AADC*, 525 U.S. at 487, 119 S.Ct. 936; *see also Regents of the Univ. of Cal.*, 591 U.S. at 19, 140 S.Ct. 1891 ("Section 1252(g) is ... narrow."). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.' " *AADC*, 525 U.S. at 482, 119 S.Ct. 936 (emphasis in original) (quoting 8 U.S.C. § 1252(g)). Instead of "sweep[ing] in any claim that can technically be said to 'arise from' the three listed actions," the provision "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (plurality opinion) (describing the holding of *AADC*). "There are of course many ... decisions or actions that may be part of the deportation process" not implicated by § 1252(g), "such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482, 119 S.Ct. 936.

The Court has characterized § 1252(g) as a "discretion-protecting provision." *Id.* at 487, 119 S.Ct. 936. The Court wrote, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9, 119 S.Ct. 936. We have jurisdiction to decide a "purely legal question" that "does not challenge the Attorney General's discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (citing *Ali v. Ashcroft*, 346 F.3d 873, 878–79 (9th Cir. 2003), *vacated on other grounds sub nom.*, *Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005)); *see Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119–21 (9th Cir. 2001); *Cath. Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc). We have jurisdiction "even if the answer to that legal question ... forms the backdrop against which the Attorney General later will exercise discretionary authority." *Hovsepian*, 359 F.3d at 1155; *see, e.g., Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding FTCA challenge to detention not barred by § 1252(g) because "[Kong's] assertions of illegal detention [were] plainly collateral to ICE's prosecutorial decision to execute Kong's removal"); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [§ 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions."); *Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999) ("[Section] 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her discretion to initiate or prosecute [the three] specific stages of the deportation process.").

Ibarra-Perez, 154 F.4th at 996.

In Ibarra-Perez, the plaintiff was granted withholding of removal to Cuba. "The government had not asked for an order removing Ibarra-Perez to Mexico, and the IJ did not designate Mexico as a country to which he could be removed." Ibarra-Perez, 154 F.4th at 991. Nonetheless, "federal immigration officials removed Ibarra-Perez to Mexico. Ibarra-Perez vehemently objected to the removal, repeatedly telling the officials that he feared what would happen to him if he were removed to Mexico." Id. Ibarra-Perez was able to return to the United

1   States and he brought suit for damages under the Federal Tort Claims Act, asserting that he was

2   improperly removed to Mexico. <u>Ibarra-Perez</u>, 154 F.4th at 991. The question addressed by the

3   Ninth Circuit was "whether the limitation contained in 8 U.S.C. § 1252(g) should be read

4   broadly to preclude Ibarra-Perez's suit, or whether it should be read narrowly to allow it." <u>Id.</u>

5   The Ninth Circuit held that § 1252(g) did not preclude the suit, rejecting the government's

6   argument that "Ibarra-Perez's objection to his removal to Mexico is a challenge to 'execution' of

7   a removal order within the meaning of § 1252(g)." <u>Id.</u> at 996–97. The Ninth Circuit noted that

8   "[t]he government's reading of § 1252(g) would entirely insulate from judicial review any post-

9   hearing decision by ICE to remove noncitizens to third countries where they would be in danger

10  of persecution, torture, and even death." <u>Id.</u> at 997. The Ninth Circuit has "been clear that §

11  1252(g) does not prohibit challenges to unlawful practices merely because they are in some

12  fashion connected to removal orders." <u>Id.</u>

13          The Court finds that the reasoning of <u>Ibarra-Perez</u> applies here and recommends finding

14  that 8 U.S.C. § 1252(g) does not strip this Court of jurisdiction over Petitioner's habeas petition.

15  <u>See</u> <u>D.V.D.</u>, 778 F. Supp. 3d at 377 (finding claims challenging the government's "authority to

16  effectively depart from the removal orders by designating new countries for removal outside of

17  the immigration proceedings and, in doing so, circumvent Plaintiffs' due-process rights and the

18  carefully crafted scheme that Congress has set forth" "are collateral to Defendants' decision to

19  execute Plaintiffs' removal, and thus not subject to section 1252(g)'s jurisdictional bar"); <u>Y.T.D.</u>

20  <u>v. Andrews</u>, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at *5 (E.D. Cal. Sept. 18, 2025)

21  ("Though 8 U.S.C. § 1252(g), precludes this Court from exercising jurisdiction over the

22  executive's decision to "commence proceedings, adjudicate cases, or execute removal orders

23  against any alien," this Court has habeas jurisdiction over the issues raised here, namely the

24  lawfulness of his continued detention and the process required in relation to third country

25  removal."); <u>Yang v. Kaiser</u>, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *3 (E.D.

26  Cal. Aug. 20, 2025) (observing "that several courts have rejected [the government's] argument"

27  and "similarly concluded that challenging removal to a third country without a valid removal

28  order to that third country is not barred by § 1252(g)") (collecting cases).

1      2. <u>D.V.D. Class Action</u>

Respondents contend that the Court may decline to consider Counts One and Two "because Petitioner is a member of a non-opt-out class certified by the District of Massachusetts in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676 (D. Mass.)," arguing that "[c]lass members like Petitioner should not get a second bite at the apple through individual habeas actions" and "Petitioner's claims relating to his prospective third-country removal to Mexico 'are more appropriately resolved in the *D.V.D.* case and [should] not be addressed in this Court.'" (ECF No. 9 at 9 (quoting <u>Ghamelian v. Baker</u>, No. 25-02106, 2025 WL 2049981, at *3 (D. Md. July 22, 2025)).) Petitioner asserts that his "membership in the *D.V.D. v. DHS* class does not justify dismissal as a prudential matter" because he "seeks injunctive relief that he cannot obtain as a *DVD* class member," namely, "he seeks an IJ hearing for both withholding of removal *and* CAT relief, while *D.V.D.* only covers CAT." (ECF No. 10 at 6.)

In March 2025, the District of Massachusetts entered a temporary restraining order enjoining ICE from "[r]emoving any individual subject to a final order of removal from the United States to a third country, i.e., a country other than the country designated for removal in immigration proceedings" unless certain conditions were met. *D.V.D.*, 2025 WL 942948, at *1.

On March 30, 2025, the Department of Homeland Security ("DHS") issued updated guidance on third country removals. Dkt. No. 4-1. The guidance states that noncitizens may be removed to a third country without notice or other "further procedures" if the country has given diplomatic assurances that individuals "removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible. *Id.* at 2–3. If the country has not provided assurances (or the assurances are deemed incredible), DHS will notify the noncitizen of its intent to remove them to the third country but "will not affirmatively ask whether the [noncitizen] is afraid of being removed" there. *Id.* Only if the noncitizen affirmatively expresses a fear of removal will the officer refer them to United States Citizenship and Immigration Services ("USCIS") for a screening interview to assess eligibility for withholding of removal or CAT protection. *Id.* at 3. If USCIS determines the noncitizen likely qualifies for protection, it will refer the matter to the immigration court or to ICE, depending on the circumstance. *Id.* And if the referral is to ICE, rather than to the immigration court, ICE may either move to reopen the noncitizen's removal proceedings "for the sole purpose of determining eligibility for protection" or it may designate a different country of removal. *Id.*

Weeks after this guidance was issued, the district court in *D.V.D.* certified a plaintiff class and issued a class-wide preliminary injunction establishing procedures DHS and ICE had to follow before removing noncitizens to a third country. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025); *see also D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering

more guidance on compliance with the preliminary injunction). The United States Supreme Court stayed the preliminary injunction without explanation pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

On July 9, 2025, following the Supreme Court's stay, ICE issued guidance to its agents reinstating the March 30 DHS memorandum. Dkt. No. 4-2. The policy set out in the July 9 guidance largely mirrors the March 30 memorandum, but adds that, in cases where no diplomatic assurances exist, ICE will serve a "Notice of Removal" identifying the country of removal, translate the notice for the noncitizen, and "generally wait at least 24 hours following service … before effectuating removal." *Id.* at 2. "In exigent circumstances[,]" however, ICE may, with proper approval, execute removal in as little as six hours after service. *Id.*

Kumar v. Wamsley, No. C25-2055-KKE, 2025 WL 3204724, at *2–3 (W.D. Wash. Nov. 17, 2025).

"Despite the pending *D.V.D.* class action and the Supreme Court's stay of the injunction issued in that case, numerous courts in the Ninth Circuit have issued injunctive relief requiring identical, or substantially similar, third-country removal procedures as those articulated in the *D.V.D.* preliminary injunction." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3485219, at *6 (E.D. Cal. Dec. 4, 2025) (collecting cases). The Ninth Circuit has held that "a district court may not 'dismiss[ ] those allegations of [the] complaint which go beyond the allegations and relief prayed for in [the class action].'" Pride v. Correa, 719 F.3d 1130, 1133 (9th Cir. 2013) (quoting Crawford v. Bell, 599 F.2d 890, 893 (9th Cir. 1979)). "[A]n individual . . . is permitted to litigate an 'independent constitutional action' where the 'specific issues' raised '[have] not already been addressed conclusively by the'" class action. Pride, 719 F.3d at 1134 (second alteration in original) (quoting Krug v. Lutz, 329 F.3d 692, 696 (9th Cir. 2003)). "[W]here a class action seeks 'systemic reform of' a government policy, while the individual claim seeks 'individual claims for injunctive relief related' to the plaintiff's mistreatment resulting from that policy, the individual claim is not barred by the class claim." A.A.M., 2025 WL 3485219, at *6 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025) (citing Pride, 719 F.3d at 1137). The Court agrees with the reasoning in Nguyen and A.A.M. and recommends finding that the Court may consider Counts One and Two despite Petitioner being a member of the D.V.D. class action.

///

3.  <u>Due Process</u>

"It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings," <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993), and "a basic tenet of constitutional due process" is "that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence," <u>Andriasian v. I.N.S.</u>, 180 F.3d 1033, 1041 (9th Cir. 1999). The Ninth Circuit has held that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." <u>Andriasian</u>, 180 F.3d at 1041. <u>Accord</u> <u>Ibarra-Perez v. United States</u>, 154 F.4th 989, 995 (9th Cir. 2025) ("DHS must also 'notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported'; otherwise, DHS violates their constitutional right to due process." (quoting <u>Andriasian</u>, 180 F.3d at 1041)).

Multiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent. <u>See, e.g.</u>, <u>Kumar</u>, 2025 WL 3204724, at *6 (noting "overwhelming authority against" the policy); <u>Vu v. Noem</u>, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) ("ICE's policy is contrary to Ninth Circuit precedent. . . . Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions."); <u>Nguyen</u>, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law, as laid out above. It would be impossible to comply both with Ninth Circuit precedent and the policy." (citations omitted)). In light of <u>Andriasian</u>, the Court recommends finding that Respondents' third country removal policy violates due process and is contrary to Ninth Circuit precedent. Accordingly, Petitioner should not be removed to a third country without meaningful notice and an opportunity to assert a fear-based claim.[5]

---

[5] In light of this conclusion, the Court declines to address Count One – whether Respondents' third country removal policy violates the INA, FARRA and its implementing regulations, and the APA.

1    In the petition, Petitioner requests the Court enjoin "Respondents from removing Mr.

2    Avila Castillo to a third country unless and until Respondents permit him to apply for fear-based

3    relief in reopened withholding-only proceedings before a neutral adjudicator." (ECF No. 1 at 30.)

4    In the opposition to the motion to dismiss, Petitioner "asks the Court to order the reopening of

5    his withholding-only proceedings for a full and fair hearing before an impartial judge on his

6    claims for withholding and CAT to Mexico (or any country DHS intends to designate)." (ECF

7    No. 10 at 12 (citing A.A.M., 2025 WL 3485219, at *11–12; Aden v. Nielsen, 409 F. Supp. 3d

8    998 (W.D. Wash. 2019)).)

9    In A.A.M., the district court stated:

Several decisions from the Western District of Washington, however, have more
thoroughly analyzed the constitutionally proper process by which a noncitizen
may seek to adjudicate his fear-based claim before removal to a third country. In
*Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash 2019) the court found that the
noncitizen's right to due process in relation to his removal to a third country
"includes the right to a full and fair hearing, an impartial decisionmaker, and
evaluation of the merits of his or her particular claim." 409 F. Supp. 3d at 1010
(citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). Accordingly,
the court in *Aden* found, "[g]iving petitioner an opportunity to file a motion to
reopen—a motion which seeks discretionary relief that may be denied without
any sort of hearing—is not an adequate substitute for the process that is due in
[the third country removal] circumstances." *Id.* Applying that analysis directly to
the DHS Third Country Removal Policy, the court in *Nguyen v. Scott*, No. 25-cv-
01398, 2025 WL 2419288 at *18 (W.D. Wash. Aug. 21, 2025), found the
"requirements set forth in *Aden* flow directly from binding Ninth Circuit
precedent about due process protections before removal to a third country,"
"[t]hat Ninth Circuit precedent is binding on this Court," and "the application of
that precedent in *Aden* is persuasive." 2025 WL 2419288 at *18. The court in
*Nguyen* therefore issued a preliminary injunction finding that "Petitioner is likely
to succeed on his claim that removal to a third country under [the DHS Third
Country Removal Policy], without meaningful notice and *reopening of his
removal proceedings for a hearing*, would violate due process." *Id.* at 19
(emphasis added).

Further, in applying the holdings from *Aden* and *Nguyen*, the court in *Abubaka v.
Bondi*, No. 25-cv-01889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17,
2025) determined "on the merits of petitioner's argument that due process does
not allow respondents to 'remove or seek to remove him to a third country
without notice and meaningful opportunity to respond in compliance with the
statute and due process in reopened removal proceedings.' " The court in
*Abubaka* emphasized that even though DHS's Third Country Removal Policy
replaced the policy at issue in *Aden*, the "ruling in *Aden* remains persuasive today
and therefore this Court adopts its holdings in *Aden* for the purposes of this ruling
...." *Id.* at 7; *see also Baltodano v. Bondi*, No. 25-cv-1958-RSL, 2025 WL
2987766, at *4 (granting motion for temporary restraining order enjoining
Petitioner's removal to third country "without notice and a meaningful

> opportunity to respond in compliance with statute and due process in reopened removal proceedings").
>
> This court finds these decisions from the Western District of Washington persuasive. Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing Petitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings.

A.A.M., 2025 WL 3485219, at *11.

The Court finds the reasoning of A.A.M. and the decisions from the Western District of Washington persuasive. Accordingly, the Court recommends enjoining Respondents "from removing Petitioner via a third-country deportation to any country" if "Petitioner does assert a fear-based claim for relief from removal . . . without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process." A.A.M. v. Andrews, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3685159, at *7 (E.D. Cal. Dec. 19, 2025). See Arenado-Borges v. Bondi, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025) (enjoining government "from removing or seeking to remove Petitioner to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings before an Immigration Judge.").

**B. Detention**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31. "After entry of a final removal order and during the 90–day

removal period . . . aliens must be held in custody." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 683

(2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
>> "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

<u>Zadvydas</u>, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In <u>Zadvydas v. Davis</u>, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id.</u> at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Id.</u> "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u>

The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.

///

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Respondents contend that Count Three of the petition "must be dismissed because Petitioner's detention has not exceeded the statutorily authorized or presumptively reasonable duration, nor has Petitioner shown that there is no significant likelihood of removal in the reasonably foreseeable future." (ECF No. 9 at 6.) Respondents argue that because "Petitioner filed a petition for review with the Ninth Circuit and has received an automatic, temporary stay of removal," "under the plain terms of § 1231(a)(1)(B)(ii), Petitioner's 90-day removal period is tolled and will begin once the Ninth Circuit issues a final order on his petition for review." (Id.) In contrast, Petitioner asserts that the "reinstatement of removal order became final in November 2023" under Riley v. Bondi, 606 U.S. 259, 267 (2025), and "the 90-day 'removal period' began when his final reinstatement order was issued, even though he then applied for relief in withholding-only proceedings" under Guzman Chavez, 594 U.S. at 540–41. (ECF No. 10 at 7.)

In Johnson v. Guzman Chavez, 594 U.S. 523 (2021), the Supreme Court considered whether 8 U.S.C. § 1226 or 8 U.S.C. § 1231 "applies to aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." Guzman Chavez, 594 U.S. at 526. Guzman Chavez only concerned 8 U.S.C. § 1231(a)(1)(B)(i)—"whether respondents were 'ordered removed' and whether their reinstated removal orders were 'administratively final.'" Id. at 534; see id. at 533 n.5 ("The other two triggers for the removal period—a court order lifting a stay and the release from non-immigration detention or confinement—do not apply here."). The Supreme Court found that "respondents' prior orders, reinstated under § 1231(a)(5), show that respondents were ordered removed" and "respondents' orders are administratively final" because "[e]ach had the opportunity to seek review in the BIA after the initial removal order was entered, and § 1231(a)(5) explicitly prohibits them from seeking review or relief from the order after it is

1  reinstated following unlawful reentry" and "there is nothing left for the BIA to do with respect to

2  the removal order other than to execute it." Guzman Chavez, 594 U.S. at 534, 535. Thus, the

3  Supreme Court "conclude[d] that § 1231, not § 1226, governs the detention of aliens subject to

4  reinstated orders of removal[.]" Id. at 526.

5      If § 1231(a)(1)(B)(i) applies, then "Petitioner's 90-day removal period began to run on

6  [November 29, 2023], the date that his removal order was reinstated after his reentry into the

7  United States." Alva v. Kaiser, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal.

8  Aug. 21, 2025) (citing 8 U.S.C. § 1231(a)(5) (providing that a prior removal order "is reinstated"

9  upon DHS's finding that the noncitizen "has reentered the United States illegally after having

10 been removed")). See Arzate v. Andrews, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL

11 2411010, at *3 (E.D. Cal. Aug. 20, 2025) ("An order of removal becomes administratively final

12 when the agency's review proceedings are complete. Given that ICE reinstated petitioner's prior

13 order of removal in February 2023, the agency's review proceedings have been complete since

14 February 2023. The order of removal has thus long been administratively final." (citations and

15 internal quotation marks omitted)); Rodriguez-Garcia v. Warden, FCI-Herlong, No. 2:23-CV-

16 0849-TLN-SCR (HC), 2025 WL 3089355, at *4 (E.D. Cal. Nov. 5, 2025) (applying Riley v.

17 Bondi, 606 U.S. 259 (2025), to find "that a reinstated order of removal . . . becomes final

18 immediately upon issuance").

19     However, Respondents contend that § 1231(a)(1)(B)(ii) is applicable and that

20 "Petitioner's 90-day removal period is tolled and will begin once the Ninth Circuit issues a final

21 order on his petition for review." (ECF No. 9 at 6.) Petitioner responds:

22     Under Respondents' logic, either the removal period ran in 2023 and then
       restarted in 2025, or it never started running at all by retroactive application of the
23     stay. Neither of these makes sense. The statute uses a singular referent for
       removal period, meaning that there is only one. Compare 8 U.S.C. § 1231(a)
24     (referring to "the" removal period) with American Bus Ass'n v. Slater, 231 F.3d
       1, 4-5 (D.C. Cir. 2000) ("It is a rule of law well established that the definite article
25     'the' particularizes the subject which is precedes."). It cannot run and then run
       again. Allowing a stay issued years later to mean that the removal period never
26     started is likewise untenable. What provision then, authorized Mr. Avila Castillo's
       detention between November 2023 at the time of the final removal order and July
27     2025, when the Ninth Circuit issued an automatic stay of removal?

28 (ECF No. 10 at 8.)

1    Respondents do not provide any authority to support their assertion that the 90-day

2  removal period is "tolled" while the Ninth Circuit's stay of removal is in place. However, in the

3  reply, Respondents state:

> Thus, under the plain terms of § 1231(a)(1)(B)(ii), Petitioner's 90-day removal
> period will not begin until the Ninth Circuit issues a final order on his petition for
> review or lifts the stay of removal. *See Prieto-Romero v. Clark*, 534 F.3d 1053,
> 1059 (9th Cir. 2008) ("The statute makes clear that when a court of appeals issues
> a stay of removal pending its decision on an alien's petition for review of his
> removal order, the removal period begins only after the court denies the petition
> and withdraws the stay of removal.").
>
> Petitioner complains that this reading of the statute does not "make[] sense," is
> "untenable," and results in multiple removal periods. ECF 10, at 6. But his
> contentions ignore the eminently logical purpose and effect of the statutory text:
> The 90-day removal period begins to run when a final order of removal becomes
> administratively final, see 8 U.S.C. § 1231(a)(1)(B)(i), but if the noncitizen elects
> to seek judicial review of that order and obtains a stay, the start of the 90-day
> removal period shifts and begins to run when the reviewing court issues its final
> order or lifts the stay of removal, *id.* § 1231(a)(1)(B)(ii).

13  (ECF No. 11 at 3.)

14    The Court finds <u>Michel v. I.N.S.</u>, 119 F. Supp. 2d 485 (M.D. Pa. 2000), instructive.

15  "[T]he BIA dismissed Michel's appeal on October 27, 1998, rendering the removal order

16  administratively final and establishing January 25, 1999, as the end of the 90–day removal

17  period. However, the Second Circuit issued a stay on February 9, 1999, and vacated the stay

18  when it affirmed the BIA on February 4, 2000." <u>Id.</u> at 497. The district court rejected the

19  petitioner's argument that the ninety-day removal period could only run from October 27, 1998,

20  the date the removal order became administratively final, because such "argument is based on a

21  premise that there can be only one removal period, and that the magistrate judge was incorrect in

22  reading the statute to allow the removal period to restart after the stay was vacated. Actually, that

23  is the *only* rational reading of the statute." <u>Id.</u> at 498. The court reasoned:

> In a sense, the only way to apply the statute to a given situation is retrospectively.
> That is, the removal period begins when the removal order becomes final. If a
> court issues a stay, the removal period begins when the stay is lifted. Therefore,
> the only way to determine when the removal period begins, or began, is to look at
> what events already have occurred. If there is another potential event, there is
> another potential beginning date for the removal period. The only sensible reading
> of this provision is that INS is required to effectuate the removal within 90 days
> of certain events, but will have another 90 days if another one of the designated
> events occurs at a later date. The obvious reason for this is that INS's authority to

1   effect the removal is suspended due to the occurrence of the later event (such as a
2   stay order).

3   Michel, 119 F. Supp. 2d at 498.

4       Here, the removal period began to run on November 29, 2023, the date that Petitioner's
5   removal order was reinstated after his reentry into the United States. See Guzman Chavez, 594
6   U.S. at 526 (holding "that § 1231, not § 1226, governs the detention of aliens subject to
7   reinstated orders of removal"). Applying the reasoning of Michel, given that the Ninth Circuit
8   has issued a stay of removal, another removal period will begin when the Ninth Circuit issues its
9   final order. However, this subsequent removal period has not yet begun because the Ninth
10  Circuit has not issued its final order. Therefore, based on the specific facts of this case, the Court
11  recommends finding that § 1231(a)(1)(B)(i) applies, Petitioner's 90-day removal period began to
12  run on November 29, 2023, the date his removal order was reinstated, the 90-day removal period
13  has expired, Petitioner is therefore in the "post-removal period" under § 1231(a)(6), which does
14  not mandate detention, and the six-month presumptively reasonable period has also lapsed.[6]

15      The Court now turns to whether Petitioner is entitled to relief pursuant to Zadvydas.
16  Petitioner contends that there is no significant likelihood of removal in the reasonably
17  foreseeable future because: (1) Petitioner cannot be removed to his home country because he has
18  a final grant of deferral of removal; (2) Petitioner has a judicial stay of removal in place from the
19  Ninth Circuit, there is no timeline by which the Ninth Circuit will resolve Petitioner's pending
20  motions, and if the case proceeds to the merits, it will take at least a year if not longer for the
21  Court to reach a decision; (3) the low percentage of noncitizens granted withholding or deferral
22  relief who have been removed to third countries;[7] and (4) even if the government secures a
23  commitment from Mexico or a third country that they would accept Petitioner, he is entitled to

24

---

25  [6] Applying Michel, when the Ninth Circuit issues its final order and lifts the stay, a new removal period will begin to
    run, DHS will have another 90 days to effectuate removal, and Petitioner would be subject to mandatory detention
26  under 8 U.S.C. § 1231(a)(2).
    [7] Petitioner notes that "in 2017 under the first Trump administration, ICE only managed to remove to third countries
27  less than two percent of noncitizens granted withholding or deferral relief." (ECF No. 1 at 28 (citing Guzman
    Chavez, 141 S.Ct. at 2295 (Breyer, J., dissenting)).) Petitioner argues that although "the current administration is
28  attempting to increase that figure . . . it is unclear whether they will be able to substantially increase the 1.6% rate."
    (ECF No. 1 at 28.)

1   present a fear-based claim, rendering any removal speculative at best. (ECF No. 1 at 27–28.)

2   Petitioner asserts that "DHS has not proven—with any evidence—that a third country such as

3   Mexico will accept Mr. Avila Castillo." (Id. at 28.)

4          Respondents have submitted the declaration of a deportation officer that states: "Without

5   the stay of removal in place, ERO would move forward with removing Petitioner to Mexico and

6   expects Mexico will accept Petitioner." (ECF No. 9-1 at 4.) Respondents do not provide any

7   details regarding what actions have been and are being taken in pursuing Petitioner's removal to

8   Mexico in the event the stay of removal is lifted. Respondents also do not explain why they

9   expect Mexico will accept Petitioner. Accordingly, the Court finds that Petitioner "provides good

10  reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

11  future," Zadvydas, 533 U.S. at 701, given that there is nothing in the record before this Court

12  other than an unexplained and unsupported declaration that Respondents expect Mexico will

13  accept Petitioner, and Respondents have not responded with evidence sufficient to rebut

14  Petitioner's showing. See Zadvydas, 533 U.S. at 702 (rejecting argument that noncitizen must

15  "show that deportation will prove 'impossible'" or "show the absence of *any* prospect of

16  removal—no matter how unlikely or unforeseeable"); Nguyen, 796 F. Supp. 3d at 725 ("Courts

17  in this circuit have regularly refused to find Respondents' burden met where Respondents have

18  offered little more than generalizations regarding the likelihood that removal will occur.").

19         "[I]f removal is not reasonably foreseeable, the court should hold continued detention

20  unreasonable and no longer authorized by statute. In that case, of course, the alien's release may

21  and should be conditioned on any of the various forms of supervised release that are appropriate

22  in the circumstances, and the alien may no doubt be returned to custody upon a violation of those

23  conditions." Zadvydas, 533 U.S. at 699–700. See Huang v. Albarran, No. 1:25-cv-01308 JLT

24  EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025) ("When, as here, a noncitizen does not

25  leave or is not removed within the 90-day removal period, the individual, 'pending removal,

26  shall be subject to supervision.' 8 U.S.C. § 1231(a)(3). 'As mandated by Congress, the default

27  status after the 90-day removal period is therefore release on conditions, not detention.' *Alva*,

28  2025 WL 2419262, at *3. Noncitizens subject to a removal order may be released pursuant to 8

C.F.R. § 241.4 or 8 C.F.R. § 241.13. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same regulations also govern revocation of release.").

Accordingly, the Court recommends finding that Petitioner's continued detention is unreasonable and no longer authorized by 8 U.S.C. § 1231(a)(6) and that Petitioner should be released on appropriate conditions.[8] See 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.5 (conditions for release after removal period). The Court recognizes that Petitioner has a criminal history and there may be concerns about the safety of the community. However, any concerns can be addressed through the conditions of supervision imposed on Petitioner upon his release. See Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004) ("Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai.").

### III.

### RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;

2. Respondents' motion to dismiss (ECF No. 9) be DENIED;

3. Petitioner be released, subject to an order of supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5;

4. Respondents be enjoined and restrained from removing Petitioner to a third country unless Respondents adhere to the following procedures:

    a.  provide Petitioner and his counsel a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;

///

///

---

[8] In light of the conclusion that Petitioner's continued detention is not authorized by statute, the Court declines to address whether Petitioner's continued detention violates the Due Process Clause.

b. if Petitioner does assert a fear-based claim for relief from removal, Respondents must provide Petitioner a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process;

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 14, 2026**

STANLEY A. BOONE
United States Magistrate Judge